# JONES DAY

51 LOUISIANA AVENUE, N.W. • WASHINGTON, DC 20001.2113

TELEPHONE: +1.202.879.3939 • JONESDAY.COM

Office: (202) 879-3939
Email: njfrancisco@jonesday.com

June 18, 2026

**By ACMS**

Catherine O'Hagan Wolfe, Clerk of Court
United States Court of Appeals for the Second Circuit
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

Re:  *United States v. Menendez et al.*, Nos. 25-296 (L), 25-302 (CON), 25-333 (CON)

Dear Ms. Wolfe:

Defendant-Appellant Robert Menendez submits this Rule 28(j) letter to apprise the Court of *Abouammo v. United States*, 608 U.S. __ (June 11, 2026). *Abouammo* supports Senator Menendez's arguments that the Government failed to establish venue in the Southern District because no essential conduct for bribery, extortion, wire fraud, FARA violations, or related conspiracies, occurred there. Dkt. 132.1 at 70-80; Dkt. 222.1 at 37-40.

*Abouammo* holds that venue is determined solely by identifying the "conduct constituting the offense"—the acts the defendant must commit to violate the statute charged—and ascertaining where those acts occurred. Slip Op. at 4-5. The Supreme Court rejected the Ninth Circuit's effort to treat "contemplated effects" as "essential conduct elements." *Id.* at 6-7. It also refused to permit venue to piggyback on conduct that "another law" proscribes. *Id.* at 9.

These principles reinforce Senator Menendez's arguments. For example, the Government invoked a New Jersey jeweler's resale of gold in New York for venue on all counts (1-5, 7, 8, 11, 13, 14, 16) except those related to the New Jersey Attorney General (9-10) and grand jury obstruction (17-18). As for the New Jersey Attorney General counts, it invoked New Jersey cell phone calls bouncing off a New York cell tower (9) and a drive across New York waters to deposit cash in Long Island (10). But as *Abouammo* makes clear, downstream acts or effects (like disposing of purported bribes) occurring *after* essential conduct is completed cannot support venue. Dkt. 132.1 at 74-76, 79; Dkt. 221.1 at 38-39. (The calls fail both constitutional and statutory venue requirements. Dkt. 132.1 at 77; Dkt. 221.1 at 38.)

To be sure, the Government suggested multiple venue theories for certain counts. But it is impossible to know whether venue for any count rested on a valid ground. Vacatur on Counts 1-16 is thus required to guarantee the constitutionally based venue protection. *See Griffin v. United States*, 502 U.S. 46, 53 (1991) ("[W]here a provision of the Constitution forbids conviction on a

AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRISBANE • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • DETROIT
DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • LONDON • LOS ANGELES • MADRID • MELBOURNE
MEXICO CITY • MIAMI • MILAN • MINNEAPOLIS • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH • SAN DIEGO • SAN FRANCISCO
SÃO PAULO • SAUDI ARABIA • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

particular ground, the constitutional guarantee is violated by a general verdict that may have rested on that ground.").

Respectfully submitted,

*/s/ Noel J. Francisco*

Noel J. Francisco
  *Counsel of Record*
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
(202) 879-3939
njfrancisco@jonesday.com

(Slip Opinion)  OCTOBER TERM, 2025  1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## ABOUAMMO *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 25–5146.  Argued March 30, 2026—Decided June 11, 2026

This case presents the question whether a defendant charged with violating 18 U. S. C. §1519—which makes it a crime to knowingly falsify a document with the intent to obstruct a federal investigation—must be tried in the district where the falsification occurred, or whether he may alternatively be tried in the district where the federal investigation was located.

While employed by Twitter at its San Francisco office, petitioner Ahmad Abouammo provided confidential information to a high-level Saudi official about Saudi dissidents posting on the company's platform.  In exchange, the official wired Abouammo $300,000.  Around the same time, Abouammo left Twitter and relocated to Seattle, where he started a social-media consulting business.  Two San Francisco-based FBI agents, who were investigating unauthorized disclosures of Twitter account information, later flew to Seattle to interview Abouammo at his home.  During the interview, Abouammo denied giving the Saudi official confidential information, claiming that the payments were for consulting work.  When the agents asked for supporting documentation, Abouammo went upstairs, created a fake invoice, and emailed it to one of the agents.  Back in San Francisco, the agents discovered from the emailed document's date-and-time metadata what Abouammo had just done.

Abouammo was indicted in the Northern District of California for falsifying a record under §1519.  He moved to dismiss the charge for improper venue, arguing that he could be tried only where the alleged falsification occurred.  The District Court denied the motion, finding venue also proper in the place where the FBI investigation was located, and a jury convicted Abouammo.  The Ninth Circuit affirmed, reasoning that §1519's intent requirement—"with the intent" to "obstruct" an

investigation—made the "contemplated effects" of the falsification part of the "essential conduct" of the offense, thereby permitting trial "where the investigation" the defendant "intended to stymie [was] ongoing or contemplated." 122 F. 4th 1072, 1092–1093.

*Held*: A defendant charged with violating §1519 must be tried in the district where the falsification occurred; he cannot be tried in a different district where the investigation was located because no "conduct constituting the offense" happened there.

The Constitution twice safeguards a defendant's venue right: Article III instructs that "Trial of all Crimes" shall "be held in the State where the Crimes shall have been committed," §2, cl. 3, and the Sixth Amendment entitles criminal defendants to a jury "of the State and district wherein the crime shall have been committed." To implement that constitutional rule, courts generally determine the location of the offense's "essential conduct elements" by identifying "the conduct constituting the offense"—the things a defendant must do to violate the statute—and then ascertaining the place where those criminal acts occurred. *United States* v. *Rodriguez-Moreno*, 526 U. S. 275, 279–280.

Under this framework, the venue for trying a §1519 offense must be where the document's falsification happened—which here was in Seattle. Section 1519 imposes criminal liability on a person who knowingly "falsifies" a "record [or] document" "with the intent to impede [or] obstruct" a federal investigation. The only prohibited act is the falsification of a document; once a person has committed that act with the requisite intent, he need do nothing more to violate the law. Because the only proscribed conduct is falsification, venue must be where falsification occurred.

Contrary to the Ninth Circuit's view, §1519's special intent provision does not lead to a different result. This Court has never looked to a statute's *mens rea* elements in considering venue, nor would it make much sense to do so. A falsification with the intent to obstruct an investigation occurs at the same place as a falsification without that intent—which is to say, at the place of falsification. The *means rea* requirement thus adds nothing to the conduct-focused analysis. The Ninth Circuit treated the "contemplated effects" of the falsification as part of §1519's "essential conduct" elements, 122 F. 4th, at 1092, but that is not so: The statute's concern with effects is instead confined to the defendant's *mens rea*. Section 1519, unlike laws barring actual obstruction, does not require that falsifying a document have any impact on an investigation. Whatever obstructive effects Abouammo's false invoice may have had in northern California, they were not elements of his crime and cannot figure in determining where his crime was committed.

The Government, for its part, declares §1519 an "inchoate offense,"

Cite as: 608 U. S. \_\_\_ (2026)　　　3

Syllabus

with some integral relationship to another (though unspecified) ob-struction-of-justice crime.  But §1519 is an independent crime, not an inchoate offense.  Inchoate offenses are necessarily "[a] step toward the commission of another crime."  Black's Law Dictionary 1297.  But a person can commit a §1519 crime without taking any steps toward an-other crime—for example, by falsifying a document with the requisite intent and then putting the document away in a drawer without ever using it to obstruct an investigation.  Rather than define an inchoate offense tethered to a crime of actual obstruction, §1519 spells out a standalone crime for falsifying documents.  Accordingly, venue for it must be based on the conduct that §1519 itself proscribes, not on the conduct some other law does.

The trial for falsifying a document must take place where the de-fendant falsified the document.  Here that was in Seattle—in venue terms, the Western District of Washington.  The trial should not have occurred in the Northern District of California because no "conduct constituting the offense" happened in that location.  Pp. 3–9.

122 F. 4th 1072, reversed and remanded.

KAGAN, J., delivered the opinion for a unanimous Court.

Cite as: 608 U. S. \_\_\_\_ (2026)  1

Opinion of the Court

NOTICE: This opinion is subject to formal revision before publication in the
United States Reports. Readers are requested to notify the Reporter of
Decisions, Supreme Court of the United States, Washington, D. C. 20543,
pio@supremecourt.gov, of any typographical or other formal errors.

# SUPREME COURT OF THE UNITED STATES

### No. 25–5146

### AHMAD ABOUAMMO, PETITIONER *v.* UNITED STATES

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

### [June 11, 2026]

JUSTICE KAGAN delivered the opinion of the Court.

The question presented concerns the proper venue for trying an alleged violation of 18 U. S. C. §1519. That statute makes it a crime to knowingly falsify a document with the intent to obstruct a federal investigation. We hold that a defendant charged with violating §1519 must be tried in the district where the falsification occurred; he cannot be tried in a different district where the investigation was located.

I

While employed by Twitter at its San Francisco office, petitioner Ahmad Abouammo provided confidential information to a high-level Saudi official about two Saudi dissidents posting on the company's platform. In return, the official wired Abouammo a total of $300,000. At around the same time, Abouammo left Twitter and relocated to Seattle, where he started a social-media consulting company.

Two San Francisco-based FBI agents, who were investigating unauthorized disclosures of Twitter account information, flew to Seattle to interview Abouammo at his home. During that hours-long talk, Abouammo denied giving the

Saudi official confidential information. The payments, he told the agents, were instead for consulting work he did for the official after leaving Twitter. When the agents asked Abouammo for documents supporting his story, he said he had retained an invoice and would retrieve it from a computer upstairs. While the agents waited for him to return, Abouammo created a fake invoice and emailed it to one of the agents. After concluding the interview, the agents returned to San Francisco, where they discovered from the emailed document's date-and-time metadata what Abouammo had just done.

Abouammo was indicted in the Northern District of California (which includes San Francisco) for falsifying a record under 18 U. S. C. §1519. That statute makes it a crime to knowingly "falsif[y]" (or similarly, "alter[], destroy[], mutilate[]" and so forth) a "record [or] document" "with the intent to impede [or] obstruct" an ongoing or contemplated federal investigation.[1] The indictment alleged that Abouammo had "creat[ed] and provid[ed] by email to the [FBI] a fabricated, false, and backdated invoice" with the requisite intent to obstruct. Superseding Indictment in No. 19–621 (ND Cal.), ECF Doc. 53, p. 18.

Abouammo moved to dismiss the §1519 charge for improper venue, contending that he could be tried only in the district encompassing Seattle (the Western District of Washington), where the alleged falsification of the invoice

---

[1] The full text of the statute reads as follows: "Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both." 18 U. S. C. §1519. In this opinion, we refer only to the falsification of a document, because that is what Abouammo did. But everything we say applies as well to a document's "alter[ation], destr[uction], mutilat[ion]" and so forth.

Opinion of the Court

had occurred. The District Court denied the motion, finding venue also proper in the place where the FBI investigation had been located. A jury then convicted Abouammo of the §1519 charge. And the court, in ruling on post-trial motions, again rejected Abouammo's venue argument. See 2022 WL 17584238, \*17 (ND Cal., Dec. 12, 2022).

The Court of Appeals for the Ninth Circuit affirmed, agreeing that venue was proper in California's Northern District because the FBI investigation took place there. Under this Court's precedents, the Ninth Circuit explained, venue is determined by identifying the "conduct constituting the offense": A trial can be held wherever that proscribed conduct, in whole or part, took place. See 122 F. 4th 1072, 1090 (2024) (quoting *United States* v. *Rodriguez-Moreno*, 526 U. S. 275, 279 (1999)). One "essential conduct element[]" of §1519, the Ninth Circuit noted, is falsification of a document; here, that element would point to Seattle as a proper place for trial. 122 F. 4th, at 1090; see *id*., at 1092–1093. But (the court maintained) §1519's intent requirement—*i.e.*, "with the intent" to "obstruct" an investigation—makes the "contemplated effects" of the falsification another "part of the essential conduct of [a §1519] offense." *Id*., at 1092. And that aspect of the offense, the court reasoned, permits trial as well "where the investigation" the defendant "intended to stymie is ongoing or contemplated." *Id*., at 1092–1093. Here, that place was San Francisco, where the agents investigating Abouammo worked.

We granted certiorari, 607 U. S. 1079 (2025), and now reverse the Ninth Circuit's judgment. The venue for trying a §1519 offense is, and is only, where the defendant falsified a document, because that is the only conduct proscribed by the statute.

II

Venue in criminal cases mattered more than might be supposed to the Nation's Founders. Prior to the Revolution,

Parliament enacted measures to try allegedly treasonous colonists in England, rather than in their home colonies. The legislation was so roundly despised as to make it into the Declaration of Independence. Among the "injuries and usurpations" listed there was the practice of "transporting us beyond Seas to be tried for pretended offences." Declaration of Independence ¶21; see *Smith* v. *United States*, 599 U. S. 236, 246–247 (2023). After the Revolution, of course, the Founders no longer had to fear transportation overseas. But they retained strong feelings about "the unfairness and hardship involved when an accused is prosecuted in a remote place." *United States* v. *Cores*, 356 U. S. 405, 407 (1958).

As a result, the Constitution not once but "twice safeguards the defendant's venue right." *United States* v. *Cabrales*, 524 U. S. 1, 6 (1998). Article III instructs that "Trial of all Crimes" shall "be held in the State where the said Crimes shall have been committed." §2, cl. 3. And the Sixth Amendment reinforces that command, entitling criminal defendants to a jury "of the State and district wherein the crime shall have been committed."

To implement that constitutional rule—meaning, to decide where the crime was committed—courts generally must determine the location of the offense's "essential conduct elements." *Rodriguez-Moreno*, 526 U. S., at 280. A court, that is, "must initially identify the conduct constituting the offense"—the things a defendant must do to violate the statute at issue. *Id.*, at 279. And then the court must ascertain the "location" of those "criminal acts"—the place where their "commission" occurred. *Ibid.*; see *United States* v. *Anderson*, 328 U. S. 699, 703 (1946) ("[T]he *locus delicti* must be determined" from "the location of the act or acts constituting" the "crime alleged"). Sometimes that inquiry points to a single district. See, *e.g.*, *Cabrales*, 524 U. S., at 6–7. Sometimes it points to more than one, because the proscribed acts happen in multiple locations. See, *e.g.*,

Opinion of the Court

*Rodriguez-Moreno*, 526 U. S., at 281–282.[2]　But either way, the inquiry remains one into the place of the crime's conduct elements—the acts that the prosecution must prove to secure a conviction.[3]

　　Under that framework, the venue for trying a §1519 offense must be where a document's falsification happened— which here was in Seattle. Recall the terms of the statute: It imposes criminal liability on a person who knowingly "falsifies" a "record [or] document" "with the intent to impede [or] obstruct" a federal investigation. See *supra*, at 2, and n. 1. The only prohibited act in that statute is the falsification of a document. Once a person has committed that act (with the requisite intent), he need do nothing more to violate the law. He need not, for example, transmit the document to anyone else, nor must he use it in any particular

—————

　　[2] Congress has codified that principle as follows: Any offense "begun in one district and completed in another, or committed in more than one district," may be prosecuted "in any district in which such offense was begun, continued, or completed." 18 U. S. C. §3237(a).

　　[3] There is an important qualification to this general statement. The cases in which we have used the "conduct elements" test are all ones in which Congress did not specify a venue rule to accompany a given offense. See, *e.g.*, *United States* v. *Cores*, 356 U. S. 405, 407 (1958) (using that test when "there is an absence" in the "statutory offense[]" of a "specific provision fixing venue"); *Travis* v. *United States*, 364 U. S. 631, 635 (1961) (using the test "[w]here Congress is not explicit" about the applicable venue rule); *Rodriguez-Moreno*, 526 U. S., at 279, n. 1 (noting that the test arose from a case in which Congress did not "indicate where [it] considered the place of committing the crime to be"). Of course, the venue rule is constitutional, and Congress lacks the power to finally decide what it means or when it is violated. But we have sometimes suggested that Congress's view of appropriate venue, even if not coincident with our "conduct elements" test, may make a difference to the analysis. See *United States* v. *Johnson*, 323 U. S. 273, 274–275 (1944). The matter is of no importance here because §1519 has no associated venue provision. But other obstruction-of-justice statutes do. See 18 U. S. C. §1512(i) (venue provision applying to substantive offenses in §1503 and §1512). Nothing we say today is meant to address that statutorily created venue scheme.

6                    ABOUAMMO *v.* UNITED STATES

Opinion of the Court

way. As both Abouammo and the Government agree, the crime is complete upon falsification (again, with the specified intent). See Tr. of Oral Arg. 4–5, 41, 53. And that fact makes the venue inquiry straightforward. Because the only proscribed conduct is falsification, venue must be where falsification occurred. Here, that means venue must be in the district encompassing Seattle, where Abouammo created the false invoice. It could not be in the Northern District of California, hundreds of miles away from that prohibited conduct.

Contrary to the Ninth Circuit's view, §1519's special intent provision does not lead to a different result. This Court has never looked to a statute's *mens rea* elements in considering venue. Nor would it make much sense to do so. Take the first (and more typical) of §1519's *mens rea* requirements: that the falsification be undertaken "knowingly." A knowing falsification occurs at the same place as an unknowing falsification—which is to say, at the place of the falsification. The *mens rea* element thus adds nothing to the conduct-focused analysis. The same is true of §1519's demand that the falsification be done with the intent to obstruct an investigation. A falsification with that intent (like a falsification without it) again occurs wherever the falsification does—which here was in Abouammo's Seattle home. The Ninth Circuit treated that second *mens rea* element differently, on the theory that it made the falsification's "contemplated effects" part of §1519's "essential conduct" elements. 122 F. 4th, at 1092; see *supra*, at 3. But that is not so: The statute's concern with effects is instead confined to the defendant's *mens rea* (or as the Ninth Circuit might put it, his "contemplat[ion]"). Section 1519 does not require that falsifying a document have any impact at all on an investigation—that it in fact obstruct or impede an investigation, present or future. (The statute thus differs from many federal laws barring actual obstruction. See, *e.g.*, 18 U. S. C. §1512(c)(2).) So whatever obstructive effects

Opinion of the Court

Abouammo's false invoice may have had in northern California, they were not elements of his crime. And because that is so, those effects cannot figure in determining where Abouammo's "crime [was] committed." Amdt. 6.

Our "seminal" decision in *United States* v. *Johnson*, 323 U. S. 273 (1944), was based on much the same principles. 4 W. LaFave, Criminal Procedure §16.2(b) (4th ed. 2025, Supp.). We there considered the place in which a prosecution brought under the Federal Denture Act should be tried. That now-defunct statute barred a person from "us[ing] the mails" "for the purpose of sending . . . into" a State any denture made by a non-dentist. 323 U. S., at 274. Venue, the Court held, was proper only where the product was put in the mail (Illinois), not where it was later received and used (Delaware). That was so, we explained, because under the Act "the crime of the sender is complete" when he drops the denture into the mailbox. *Id.*, at 277. It was immaterial that the illegal denture traveled on to Delaware—as it is that Abouammo's false invoice reached California. Likewise, it was immaterial that the defendant acted "for the purpose of" transporting the denture into another State— as it is that Abouammo acted "with the intent" to obstruct an investigation across state lines. In *Johnson*, the "crime [was] complete" in Illinois, so that is where the trial had to take place. *Ibid.* And here, Abouammo's "crime [was] complete" in Washington, so that is where he had to be tried. *Ibid.* Just as in *Johnson* "contemplated effects" (to use the Ninth Circuit's term) could not allow trial in another State, so they should not in the case before us. 122 F. 4th, at 1092.

The Government tries to escape those difficulties by declaring §1519 an "inchoate offense," with some integral relationship to another (though unspecified) obstruction-of-justice crime. Tr. of Oral Arg. 39; see *id.*, at 38–40. True enough, the Government concedes, that the only act §1519 prohibits is falsifying a document. But the statute's "intent to obstruct" requirement links it to offenses involving

actual obstruction.  And because that is so, the Government contends, venue can be based on conduct that is an element of those other crimes (even though not of §1519).  So here, the Government posits, Abouammo's transmission of his false invoice to an FBI agent based in San Francisco would make California's Northern District a proper place for trial—because that transmission (though irrelevant to §1519) would be critical to proving some "ultimate" obstruction crime.  Tr. of Oral Arg. 40.  The Government analogizes its proposed approach to the venue rule used in conspiracy cases, which allows trial wherever an overt act furthering the conspiracy has taken place, even when only a criminal agreement—and not those overt acts—is required to prove the conspiracy charged.  See *ibid.*; *Whitfield* v. *United States*, 543 U. S. 209, 218 (2005).

The fundamental problem with that theory is that §1519 is an independent crime, not an inchoate offense.  The Government, in arguing its case, points to Black's Law Dictionary's definition of the term.  See Brief for United States 28.  But there we find the following: "The three inchoate offenses are attempt, conspiracy, and solicitation"—as in, say, a conspiracy to commit murder, an attempt to commit murder, and the solicitation of murder.  Black's Law Dictionary 1297 (12th ed. 2024).  The Government does not claim that §1519 is one of those three.  And even if inchoate offenses are not a closed set, they are necessarily, as Black's also says, "[a] step toward the commission of another crime."  *Ibid.*  But a §1519 offense need not be.  Section 1519 has no specific object crime, in the way inchoate offenses do: The Government notably does not identify any obstruction-of-justice statute whose violation is the goal of a §1519 offense.  And a person can, in some circumstances, commit a §1519 crime without taking any steps toward another crime.  For example, a §1519 offense occurs, as the Government agrees, when a person falsifies a document (with the requisite intent) and then puts it away in a drawer—so

Opinion of the Court

without ever using it to obstruct an investigation. See Tr. of Oral Arg. 52–54, 65–66. Rather than define an inchoate offense tethered to a crime of actual obstruction, §1519 thus spells out a standalone crime for falsifying (and otherwise tampering with) documents. So venue for it must be based on the conduct that §1519 itself proscribes, not on the conduct another law does.

Our holding today is "discrete" and narrow, as our venue decisions usually are, because it is based on "the nature of the [specific] crime charged." *Travis* v. *United States*, 364 U. S. 631, 635 (1961). Section 1519 prohibits only one act: that of falsifying a document. Because the Government need show nothing else, a §1519 offense is relatively easy to prove. But with that ease comes one cost: Because the Government need show nothing else, its venue options are confined. The trial for falsifying a document must take place where the defendant falsified the document. Here that was in Seattle—meaning in venue terms, the Western District of Washington. The trial should not have occurred in the Northern District of California because no "conduct constituting the offense" happened in that location. *Rodriguez-Moreno*, 526 U. S., at 279.

We accordingly reverse the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*